548 So.2d 499 (1988)
Charles Richard OGLE
v.
STATE.
8 Div. 872.
Court of Criminal Appeals of Alabama.
January 26, 1988.
On Return to Remand July 21, 1989.
Rehearing Denied August 25, 1989.
Henry S. Mims, Huntsville, for appellant.
Don Siegelman, Atty. Gen., and Cecil G. Brendle, Jr., Asst. Atty. Gen., for appellee.
TYSON, Judge.
The appellant's counsel has failed to file a brief in this cause after receiving proper notice from this court.
This cause is hereby remanded to the Circuit Court of Marshall County, Alabama, for that court to appoint different counsel to represent this appellant on appeal of this cause, and to be certain that such counsel does file a brief in this court.
REMANDED WITH DIRECTIONS.
All the Judges concur.

ON RETURN TO REMAND
TYSON, Judge.
Charles Richard Ogle was indicted for first degree theft of property, in violation *500 of § 13A-8-2, Code of Alabama 1975. He was found "guilty as charged in the indictment" and sentenced to 15 years' imprisonment. This case was previously remanded to the Marshall County Circuit Court for the appointment of different counsel to represent the appellant on appeal because the appellant's previous counsel failed to file a brief with this court.
The record reveals that, for part of 1986, Ogle was the manager of a convenience store in Claysville, owned by McPherson Oil Company. The treasurer of the company, Jerry Boles, testified that it was Ogle's responsibility at the end of his shift to prepare both the shift report for the "A" shift, which Ogle worked, and the shift report for the previous night's "B" shift. Ogle was also responsible for making all of the bank deposits for the store. The employees who worked the "B" shift would deposit all money above $100.00 into a special drop safe during the course of the shift. Boles testified that no other current employees at the store had the combination to the safe except Ogle. A company supervisor picked up the shift reports approximately twice a week.
Boles testified that around January 1987, he noticed a problem with the records for the Claysville store. He stated that a pattern of late deposits began in June 1986. Although the deposits were dated for a certain day, they were not deposited until 18 to 60 days later. There were approximately 24 late deposits between June and December of 1986. Boles further testified that he also discovered that many deposits were missing. Although deposit slips were filled out, some of the money listed on the deposit slips was never deposited in the bank. According to Boles, this occurred in 1986 on August 4, 5, 7, 8, 10, 15, 30 and 31; September 5, 16, 21, 23, 26, 27 and 28; October 8, 19 and 21; November 7, 13, 14 and 27; and December 8. Ogle was the manager of the store during the period the missing and late deposits occurred. The sum total of the missing deposits was $25,657.90.
Boles stated that he went to the store to discuss the matter with Ogle and with two other supervisors on December 10, 1986. Boles testified that, at this time, Ogle denied having any knowledge of the late or missing deposits. The store officials found a bank bag in Ogle's desk that day which contained a deposit slip for December 8, but the bag was missing $690 in cash.
Boles testified that he received copies of every deposit slip dating from July 1, 1986, through December 15, 1986, from the bank. Boles stated that he examined the deposit slips and the checks received by the store. He further testified that the September 19 deposit slip listed nine checks dated September 19 and three checks dated July 20. The total amount of the three July checks equaled the amount that was missing from the July 20 deposit. There were also other deposit slips that also reflected older checks which equaled the amounts of some of the missing deposits.
Boles further testified that the only way for Ogle to fill out the shift reports, which were broken down into cash, credit and check purchases, was to physically possess the money or items. He testified that of the $3,328.56 in missing deposits that was attributable to checks, $2,072.89 was deposited at a later date. The remainder of the missing money had been paid to the store in cash. On cross-examination, Boles testified that between 1984 and 1986, approximately four other employees had the combination to the safe and other employees had keys to the store.
Alan Jones, who was a store supervisor in 1985, testified that both he and Tonya Broom were told the combination to the safe and had a key to the store. Tonya Broom was the manager of the store before the appellant became manager. Jones further testified that Broom turned her key in to him when she left the job and that he had also turned in his key when he was no longer a store supervisor. He testified that he did not remember the combination and had no record of it. Tonya Broom (Thomas) testified that she returned her store key to Alan Jones and that she did not remember the combination to the safe. Barbara Gray, who was employed as the evening cashier during the time Ogle was *501 the manager, testified that she did not have a combination to the safe at that time. She also testified that she had seen Ogle's wife open the safe. Gray stated that she never prepared any shift reports at that time. Joy Shanner, the cashier for the "A" shift, testified that she never knew the combination to the safe and did not prepare any shift reports in 1986. Another store employee, Elaine Mardis, also testified that she never had the combination to the safe and never saw any of the other employees opening the safe.
Charlene Miller, the cashier and operations manager at The Home Bank, testified that several cash deposits were made to the Ogles' joint account during July, August and September of 1986. A cash deposit of $400.00 was made on July 21 and another cash deposit of $140.00 was made on July 22. Cash deposits totaling $2,632.51 were also made in September 1986.
The appellant contends that the evidence is insufficient to sustain the conviction and, therefore, the trial court erred in denying his motion for new trial. He argues that the evidence indicated that four people other than Ogle had access to the safe and keys to the store. This argument has no merit, as there is ample evidence to support the appellant's conviction. The evidence indicates that Ogle had the sole responsibility for preparing shift reports and making deposits. He was the only store employee at the time of the theft who had access to the safe. A large number of deposits were either late or missing. Ogle and his wife made several large cash deposits into their checking account during this period. The first of these deposits was made the day after the first missing deposit.
The test to be applied in reviewing a case based on circumstantial evidence is "whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis except that of guilt, but whether a jury might reasonably so conclude." Cumbo v. State, 368 So.2d 871, 874 (Ala.Crim.App.1978), cert. denied, 368 So.2d 877 (Ala.1979). A conviction will not be set aside on the basis of insufficiency unless, "allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust." Johnson v. State, 378 So.2d 1164, 1169 (Ala.Crim.App.), cert. quashed, 378 So.2d 1173 (Ala.1979). See also, Morton v. State, 338 So.2d 423 (Ala.Crim.App.), cert. denied, 338 So.2d 428 (Ala.1976). Any conflict in the evidence presents a jury question and a verdict rendered thereon will not be reversed on appeal. Knight v. State, 548 So.2d 647 (Ala.Crim.App.1989); Hughes v. State, 412 So.2d 296 (Ala.Crim.App.1982).
A review of this record reveals that there is sufficient evidence to sustain the conviction and the motion for new trial was, therefore, properly denied.
For the reasons shown, this cause is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.