The appellant, Damon Arnez Tolliver, was convicted of five counts of breaking and entering a vehicle, violating § 13A-8-11, Ala. Code 1975; two counts of second-degree theft, violating § 13A-8-4, Ala. Code 1975; and three counts of third-degree theft, violating §13A-8-5, Ala. Code 1975. For each breaking and entering conviction and each second-degree theft conviction, he was sentenced to 15 years' imprisonment. For two of the third-degree theft convictions, he was sentenced to one year's imprisonment. For the third-degree theft conviction in CC-2000-213, Tolliver was sentenced to 15 years' imprisonment.[1] The trial court ordered that the sentences were to run concurrently.
The State's evidence established the following. W.T. Grant, a City of Montgomery police officer, testified that, at 3:45 a.m. on April 2, 1999, while patrolling a local apartment complex, he saw a burgundy automobile speeding away from the parking lot of the complex. Grant stated that he stopped the car before it left the apartment complex parking lot. According to Grant, Ronald Shuford was driving the car and Tolliver was sitting in the front passenger's seat. Grant testified that a checkbook with the name "Andrew Rodgers" was sitting on the seat next to Tolliver, that car stereo equipment was between Tolliver's legs on the floorboard of the car, and that additional car stereo equipment was found in the trunk of the car. Grant stated that when he first asked Tolliver to identify himself, Tolliver gave him what turned out to be a false name. Grant stated that after he stopped Shuford's car police officers patrolled the area and found several cars with broken windows and that appeared to have had stereo equipment removed.
Chris Grandison, a City of Montgomery police officer, testified that the police retrieved several items from the burgundy car. The record indicates that the police *Page 993 
seized several items, including car stereos and stereo equipment, several compact discs, a jacket, a checkbook, a screwdriver, and wire cutters.
Steve Hecht, a manager at Blount Strange Ford Lincoln Mercury, Inc., a car dealership operating in Montgomery at the time of the offenses, testified that the police contacted him during the early morning hours of April 2. Hecht stated that he went to the dealership's lot and noticed that a Honda vehicle that was the property of the dealership had had its window broken and that a stereo worth approximately $100 had been removed from the vehicle. Andrew Paul Rodgers, Jr., testified that the police contacted him during the early morning hours of April 2 and that in response to this call he went to the Blount Strange dealership. According to Rodgers, the "vent" window of his Nissan Maxima automobile had been broken, and his checkbook and several manuals had been removed from his car. Rodgers testified that the total value of the missing property was less than $250. Grandison stated that Rodgers retrieved his checkbook from those items seized from Shuford's car that had been taken to the police station.
Patrick Skelton testified that he resided at the Turtle Place Apartments, an apartment complex. The record indicates that the apartment complex was located near the Blount Strange dealership. Skelton stated that on the morning of April 2, he noticed that the rear passenger window of his Honda Prelude automobile had been broken, and that his compact-disc player and a carrying case containing approximately 50 compact discs was missing. Skelton estimated that the total value of the missing property was $625. S.R. Jones, a City of Montgomery police officer, testified that the day after the break-in of his car, Skelton identified and retrieved his missing property from the police station.
Although Penton Wilbanks, one of the victims, did not testify at Tolliver's trial, the record indicates that the defense stipulated that Wilbanks's testimony would have been as follows. On March 31, he took his Ford Ranger pickup truck to the Blount Strange dealership for repairs. When he returned to the dealership on April 2, he noticed that a rear sliding glass window had been broken and that his compact-disc player had been removed. At the police station, he identified his compact-disc player, the approximate value of the compact-disc player was less than $250. Jones testified that, the morning after the incident, Penton Wilbanks came to the police station and identified his property and retrieved his compact-disc player, which was among the items seized from Shuford's car.
Tammy Yarbrough testified that she was visiting a friend in the Woodmere apartment complex and that the police contacted her shortly after her car had been broken into. Yarbrough stated that the side passenger's window of her Ford Mustang automobile had been broken, and that her stereo and speakers had been removed. According to Yarbrough, the total value of the missing property was between $650 and $800. Grandison testified that Yarbrough identified and retrieved two speakers, a compact-disc player, and a jacket from the items seized from Shuford's car.
 I.
Tolliver appears to contend that the trial court erred in consolidating the indictments for trial.
Tolliver raises this issue for the first time on appeal. "This court has held that claims regarding the consolidation of related cases must be raised at trial to be eligible for appellate review." Brown v. *Page 994 State, 701 So.2d 314 (Ala.Crim.App. 1997), citing Thomas v. State,587 So.2d 1248 (Ala.Crim.App. 1991). Because Tolliver did not object during the pendency of the case and did not file any pretrial motions relating to the consolidation of the cases to the trial court, the issue was not preserved.
Moreover, the record indicates that the trial court did not err in consolidating the cases.
Rule 13.3, Ala.R.Crim.P., permits the consolidation of two or more offenses in an indictment if the offenses: "1) Are of the same or similar character; 2) Are based on the same conduct . . .; or 3) Are alleged to have been part of a common scheme or plan." See also James v. State,681 So.2d 269, 271 (Ala.Crim.App. 1996). Rule 13.3(c) provides that the court may order charges tried together, if the offenses could have been joined in a single indictment. "`[P]erhaps the most important consideration is to answer the following question: If the offense[s] were tried separately, would evidence of each offense be admissible in the trial for the other offense?'" Campbell v. State, 718 So.2d 123, 127
(Ala.Crim.App. 1997), quoting Yelder v. State, 630 So.2d 92, 96
(Ala.Crim.App. 1991), reversed on other grounds, 630 So.2d 107 (Ala. 1992).
Our review of the record indicates that the separate offenses Tolliver was charged with were connected in their commission and were part of a common scheme or plan. All of the cases consisted of acts of breaking and entering vehicles and removing property from the vehicles over the course of one evening. Thus, the trial court did not abuse its discretion by consolidating the offenses. See Zumbado v. State,615 So.2d 1223, 1232 (Ala.Crim.App. 1993).
Additionally, Tolliver contends that he did not receive timely notice that his cases were going to be consolidated. The record indicates that defense counsel and the trial court treated the cases as consolidated as early as February 2000. (C. 44, 55.) Tolliver's trial was conducted on April 12 and 13, 2000. Therefore, Tolliver's claim that he did not receive timely notice of the consolidation is without merit.
 II.
Tolliver contends that the only evidence indicating that he committed the offenses is his codefendant's testimony and his statement to the police. Specifically, he argues that Ronald Shuford's testimony was not sufficiently corroborated.
"Corroboration need only be slight to suffice." Ingle v. State,400 So.2d 938, 940 (Ala.Crim.App. 1981). Circumstantial evidence is sufficient to show corroboration. Jackson v. State, 451 So.2d 435, 437
(Ala.Crim.App. 1984). "The testimony of an accomplice must be corroborated `by other evidence tending to connect the defendant with the commission of the offense,' but it is not necessary that there should be other evidence which would, of itself, warrant a conviction." Kuenzelv. State, 577 So.2d 474, 515 (Ala.Crim.App. 1990), quoting Lumpkin v.State, 68 Ala. 56, 57-58 (1880).
In this case, Shuford testified that, around 10:00 p.m. on April 1, he and Tolliver left his apartment in his burgundy car and drove around town looking for cars to break and enter. Shuford stated that they went to a local car dealership, to apartments located near the dealership, and to a bowling alley parking lot. According to Shuford, he stood outside of his car and watched for the police while Tolliver removed stereo equipment from vehicles. Shuford testified that, while they were at the Blount Strange dealership, Tolliver used a screwdriver to break a rear window of a Nissan Maxima automobile *Page 995 
and that they then put items from that car into the trunk of their car. Shuford stated that Tolliver looked into a pickup truck at the dealership, and that Tolliver may have taken a radio from the truck. Shuford further stated that Tolliver broke into several other cars in the area, including cars parked at nearby apartment complexes.
Grant testified that he stopped Shuford and Tolliver in the parking lot of an apartment complex. Grant stated that a checkbook with the name of one of the victims was on the seat next to Tolliver, that car stereo equipment was between Tolliver's legs on the floorboard of the car, and that stereo equipment was found in the trunk of the car. Additionally, Grant stated that several police officers patrolled the area and found several cars that had broken windows and that appeared to have had stereo equipment removed. Van Landingham, a City of Montgomery police officer, testified that, in addition to stereo equipment that was seized from Shuford's car, a screwdriver and bolt cutters were seized. At trial, testimony from the victims concerning the type of vehicles they owned, the damage to their vehicles, and the type of property removed corroborated Shuford's testimony.
Given that Shuford's testimony was corroborated by other evidence tending to connect Tolliver with the commission of the offense, the trial court did not err in determining that there was sufficient evidence to corroborate Shuford's testimony.
 III.
Tolliver maintains that in case no. CC-2000-214 the state failed to establish a prima facie case of breaking and entering a vehicle and third-degree theft.[2]
Section 13A-8-5, Ala. Code 1975, states, in pertinent part:
 "(a) Except as provided in subsection (g) of Section 13A-8-4, the theft of property which does not exceed $250.00 in value and which is not taken from the person of another constitutes theft of property in the third degree."
Section 13A-8-11, Ala. Code 1975, states, in pertinent part:
 "(b) A person commits the crime of unlawful breaking and entering a vehicle if, without consent of the owner, he breaks into and enters a vehicle or any part of a vehicle with the intent to commit any felony or theft. For the purposes of this section `enters' means to intrude:
"(1) Any part of the body; or
 "(2) Any physical object connected with the body."
In Rhodes v. State, 580 So.2d 92 (Ala.Crim.App. 1991), this Court stated:
 "`It is well-settled that theft may be proven by circumstantial evidence.' Robinson v. State, 432 So.2d 518 (Ala.Crim.App. 1983); Jordan v. State, 392 So.2d 1230 (Ala.Crim.App. 1980), cert. denied, 392 So.2d 1233 (Ala. 1981); Richardson v. State, 374 So.2d 433 (Ala.Crim.App. 1979). Because larceny is secret in nature, it must frequently be proved by circumstantial evidence. Richardson. `In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might *Page 996 
 reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude.' Mauldin v. State, 376 So.2d 788, 791 (Ala.Crim.App.), cert. denied, 376 So.2d 793
(Ala. 1979) (quoting, Cumbo v. State, 368 So.2d 871, 874 (Ala.Crim.App. 1978), cert. denied, 368 So.2d 877
(Ala. 1979)). See also Ogle v. State, 548 So.2d 499
(Ala.Crim.App. 1988)."
580 So.2d at 94.
In S.S.S. v. State, 662 So.2d 1211, 1213 (Ala.Crim.App. 1994), this Court stated:
 "`Circumstantial evidence is not inferior evidence, and it will be given the same weight as direct evidence, if it, along with the other evidence, is susceptible of a reasonable inference pointing unequivocally to the defendant's guilt.' Ward v. State, 610 So.2d 1190, 1191 (Ala.Cr.App. 1992)."
In Henry v. State, 555 So.2d 768 (Ala.Crim.App. 1989), this Court stated:
 "The words `aid and abet' encompass all assistance by acts, words of encouragement, or support, or presence, actual or constructive, to render assistance should it become necessary. Wright [v. State, 494 So.2d 936, 937 (Ala.Crim.App. 1986)]; Sanders v. State, 423 So.2d 348 (Ala.Cr.App. 1982). Actual participation in the crime need not be proved by positive testimony to convict someone of aiding and abetting. `The jury is to determine whether the appellant's participation exists and the extent of it from the conduct of the parties and all the testimony presented.' Walls v. State, 378 So.2d 1186, 1191
(Ala.Cr.App. 1979), cert. denied, Ex parte Walls, 378 So.2d 1193 (Ala. 1980). Such facts as the defendant's presence in connection with his companionship, and his conduct at, before and after the commission of the act, are potent circumstances from which participation may be inferred. Sanders v. State, supra; Smith v. State, 57 Ala. App. 151, 326 So.2d 680 (1975), cert. denied, 295 Ala. 419, 326 So.2d 686 (1976)."
555 So.2d at 769. See St. John v. State, 473 So.2d 658, 660
(Ala.Crim.App. 1985).
"`Where the evidence is conflicting as to the defendant's connection as an accomplice or co-conspirator, a jury question is presented.'" Henryv. State, 555 So.2d at 770, quoting Sanders v. State, 423 So.2d 348, 351
(Ala.Crim.App. 1982).
In this case, Hecht, a manager at Blount Strange, testified that, during the early morning hours of April 2, he was contacted by the police. Hecht stated that he went to the dealership and noticed that a window had been smashed and a stereo worth approximately $100 had been removed from a Honda automobile that belonged to the dealership.[3]
Shuford testified that, during the early morning hours of April 2, Tolliver broke into several cars at the car dealership and removed stereo equipment. Additionally, Grant testified that, on the morning of April 2, he stopped Shuford and Tolliver, and that Tolliver was sitting in the front passenger's seat with stereo equipment between his legs. Testimony indicated that additional stereo equipment was found in the trunk of the car. *Page 997 
When viewing the evidence in the light most favorable to the state as we are required to do, see McKinney v. State, 654 So.2d 95, 99
(Ala.Crim.App. 1995), we find that the direct and circumstantial evidence established a prima facie case of third-degree theft and of breaking and entering a vehicle. Thus, the trial court did not err in denying the motion for a judgment of acquittal.[4]
 IV.
Our review of the record reveals a discrepancy between the trial court's sentencing order and the jury's verdict in case no. CC-2000-213. The record indicates that in that case the jury found the appellant guilty of third-degree theft. However, the trial court's sentencing order indicates that Tolliver was convicted of second-degree theft and was sentenced to 15 years' imprisonment. Tolliver's sentence in case no. CC-2000-213 exceeded that authorized by law for one convicted of third-degree theft.
"`When the court imposes sentence in excess of that authorized by statute, it exceeds its jurisdiction, and the sentence is void.'" Kingv. State, 677 So.2d 836, 838 (Ala.Crim.App. 1996), quoting Ferguson v.State, 565 So.2d 1172, 1173 (Ala.Crim.App. 1990). See Hutchins v.State, [CR-99-0139, April 28, 2000] ___ So.2d ___ (Ala.Crim.App. 2000).
Third-degree theft is a Class A misdemeanor. § 13A-8-5(b), Ala. Code 1975. The maximum sentence of imprisonment for a Class A misdemeanor is not more than one year. § 13A-5-7(a)(1), Ala. Code 1975. Thus, Tolliver's sentence in case no. CC-2000-213 is void, and we remand this cause for the trial court to sentence Tolliver within the appropriate range of punishment.
Because Tolliver was actually convicted of third-degree theft in case no. CC-2000-213, we remand this case for the trial court to clarify the discrepancy in its sentencing order. Additionally, because Tolliver's sentence for third-degree theft in case no. CC-2000-213 exceeds the maximum authorized by law, on remand the trial court shall sentence Tolliver in accordance with § 13A-5-7(a)(1), Ala. Code 1975. The trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 42 days of the release of this opinion. The return to remand shall include a transcript of the remand proceedings conducted by the trial court.
REMANDED WITH DIRECTIONS.
Long, P.J., and McMillan, Cobb, and Baschab, JJ., concur.
[1] We note that the sentence for third-degree theft in case no. CC-2000-213 exceeds the maximum authorized by law. We address this issue in Part IV of this opinion.
[2] In Tolliver's brief to this Court, he refers to case no. CC-2000-213, and argues that certain facts in the case were not sufficient to establish a prima facie case of breaking and entering a vehicle and third-degree theft at the Blount Strange dealership. (Tolliver's brief to this Court at p. 10.) However, the record indicates that Tolliver's argument involving the Blount Strange dealership addresses the facts in case no. CC-2000-214.
[3] Grandison testified that, although Hecht went to the police station and looked through the stereo equipment seized from Shuford's car, he was unable to identify the stereo that had been removed from the Honda automobile. Grandison stated that Hecht indicated that, because there were several vehicles at the dealership with different types of compact disc players, he was not sure which compact disc player was the one that had been removed from the vehicle.
[4] Additionally, our review of the record indicates that the evidence was sufficient to establish a prima facie case of third-degree theft and of breaking and entering an automobile in case no. CC-2000-213.