WELCH, Presiding Judge.[1]
Timothy Dane Tillman was convicted of murder, a violation of § 13A-6-2, Ala.Code *834 1975, for the killing of his wife, Janet, and of criminal possession of a forged instrument in the second degree, a violation of § 13A-9-6, Ala.Code 1975. Tillman was sentenced to life imprisonment for the murder conviction, and to 10 years in prison for the criminal-possession-of-a-forged-instrument conviction, both sentences to be served consecutively.
Because of our resolution of this case, only a brief recitation of the facts is necessary here. Tillman married the victim, Janet, in December 1983. They had two daughters, one born in 1986 and one born in 1991. The Tillman family lived in Jacksonville, Florida, until 1995. In 1995, they moved to Minneapolis, Minnesota. While living in Minnesota, Tillman pleaded guilty to solicitation of a prostitute. In 2000, the Tillman family moved to Alabama.
After the family moved to Alabama, Tillman became the pastor of Vincent Revival Center, which is an Assembly of God congregation. The congregation elected Tillman to be the pastor, but he needed to obtain permission from the Alabama District Council of the Assembly of God to continue as the pastor of the church because he was not “credentialed” by the Assembly of God to serve in that capacity. Tillman was informed that in order to be credentialed, he would have to complete a preliminary application and an official application. The preliminary application authorizes a credit check on the applicant. The official application allows the organization to conduct a criminal background check of the applicant. Approximately five months after Janet’s death in October 2005, Tillman completed the preliminary application, but he never completed the official application. Within two months after he completed the preliminary application, Tillman resigned from his position as pastor at Vincent Revival Center.
An official with the district council testified that divorce, marital infidelity, or a prior sex-related criminal offense usually would prevent or delay the credentialing process or the person would be required to undergo extensive rehabilitation before the person could be an active minister.
Before Janet’s death, Tillman had begun an intimate relationship with a woman who lived in Mississippi. Tillman represented to the woman and her family that he was a divorced United States Navy officer and that his name was Timothy Patrick McNally. In May 2005, Tillman wrote letters to the woman, stating that he looked forward to her being a “mother-figure” to his daughters and becoming his wife and sharing their family life together forever. In August 2005, Tillman proposed marriage to the woman, and she accepted.
On September 14, 2005, Tillman wrote an e-mail to Janet that expressed his love for her and their daughters, and apologized “not being the most pleasant person to be around the past several weeks.” (C. 204.)
In September 2005, Tillman suggested to the staff and some of the members at Vincent Revival Center that the church sponsor a turkey shoot on Saturdays in October to raise money for the victims of a hurricane that had recently struck the Gulf coast. Tillman was substantially involved in the organization of the turkey shoot, which was scheduled to take place on the *835 grounds of the Vincent Revival Center on October 8,15, 22, and 29, 2005.
After the turkey shoot held on October 22, 2005, Tillman and two church members checked the guns to make sure they were unloaded; one of the guns, a bolt-action gun, was jammed and could not be fired. Tillman and the two church members gathered the guns into their arms and placed them in the trunk of Tillman’s vehicle.
On October 26, 2005, Janet died of a gunshot wound to the back suffered while she and Tillman were in the parsonage behind the church. Tillman said he and Janet were carrying three shotguns used at the turkey shoot from his vehicle into the parsonage. Tillman admitted that he was holding the gun that fired the fatal shot, but he said he was attempting to adjust the guns in his hands as he carried them when one of the guns accidentally fired and the shot struck Janet in the back. The State presented testimony that tended to show that the shooting could not have occurred as Tillman had described, but a defense firearm expert testified that the shooting was consistent with an accident.
On January 31, 2006, a check payable to Janet in the amount of $5,000.47 was deposited into Janet and Tillman’s account at AmSouth Bank (now Regions Bank). The check was an unsolicited loan offer from another bank that was sent on January 16, 2006, almost three months after Janet’s death. The check was endorsed with what appeared to be Janet’s signature. A law-enforcement investigation into the forgery of the check led to further interviews of Tillman, and video recordings of those interviews were played for the jury. Tillman admitted that he forged Janet’s signature on the check. Tillman explained that he used the money to pay for Janet’s headstone and to cover household expenses for his family.

Analysis

Tillman raises five issues in his brief on appeal: That the trial court erred when it admitted evidence of an unrelated prior conviction; that the trial court erred when it refused to exclude evidence of prior bad acts; that the trial court erroneously consolidated the intentional-murder and forgery charges; that the trial court erred when it charged the jury on consciousness of guilt; and that the State failed to present sufficient evidence to support the murder conviction. We need address only the consolidation issue, however, because we hold that the trial court erred to reversal when it consolidated the murder charge and the forged-instrument charge for trial.
Tillman argues on appeal, as he did in the trial court, that the trial court erroneously consolidated his possession-of-a-forged-instrument charge with the murder charge. Tillman was initially charged in separate indictments, and the State moved before trial to consolidate the charges. The trial court granted the State’s motion to consolidate, over Tillman’s objection. The State argued, in part, at the hearing on the motion to consolidate:
“And, Your Honor, as we put on the forgery case, which we will do at some point in time, he has forged his dead wife’s name and I believe the State is entitled to explain why she is dead. I think we will get to put on the evidence of that in the forgery case. And transversely we have the financial reasons, the financial motive. And if you look at the law on consolidation you consolidate if the conduct or the two offenses are based on the same conduct or otherwise committed [sic] in their commission.”
*836 (Supp. R. 25.)[2] The State also argued that the forged-instrument charge was one part of the financial aspect of Tillman’s motive to kill his wife. (Supp. R. 24.) In support of his contention that the charges should not be consolidated, Tillman argued to the court, in relevant part:
“What if [Tillman] is found not guilty in the murder case? Then they got to put in murder for a $5,000 check that he didn’t know somebody was going to mail to him a year and three months later. The forgery has nothing whatsoever to do with the murder case. I can’t — if he is found not guilty of the murder then what portion of all this ‘he’s no good, he is bad, you must convict him,’ evidence should get to come in on forgery? It’s just a straight up forgery....”
(Supp. R. 25.)
Rule 13.3(a), Ala. R.Crim. P., provides that offenses can be joined in a single charging instrument:
“(a) Offenses. Two or more offenses may be joined in an indictment, information, or complaint, if they:
“(1) Are of the same or similar character; or
“(2) Are based on the same conduct or are otherwise connected in their commission; or
“(3) Are alleged to have been part of a common scheme or plan'.”
Rule 13.3(c), Ala. R.Crim. P., provides for consolidation of separately charged offenses if certain criteria are met: “If offenses ... are charged in separate indictments, informations, or complaints, the court on its own initiative or on motion of either party may order that the charges be tried together ... if the offenses ... could have been joined in a single indictment, information, or complaint.”
In King v. State, 518 So.2d 880 (Ala.Crim.App.1987), this Court held:
“The question of the propriety of join-der under Rule [13.3(a) ] is a question of law, subject to full appellate review. See United States v. Werner, 620 F.2d 922, 926 (2d Cir.1980). However, the harmless error doctrine is applicable to misjoinder; misjoinder requires reversal ‘only if the misjoinder results in actual prejudice because it “had substantial and injurious effect or influence in determining the jury’s verdict.” ’ United States v. Lane, 474 U.S. 438, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986) (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).”
518 So.2d at 884.[3]
The State argued at trial that the murder charge and the possession-of-a-forged- *837 instrument charge should be consolidated because, it argued, they were part of a common plan or scheme and they were connected in a series of events. The State further argued that evidence in the trial of either charge would be admissible in a trial of the other charge. The State did not argue in the trial court that the crimes were of a same or similar character, see Rule 13.3(a)(1), Ala. R.Crim. P., which would not have been a valid argument, because the two crimes were remote in time, completely dissimilar — sharing no common characteristics or any kind of likeness — and the evidence of each offense did not overlap. E.g., Hinton v. State, 548 So.2d 547 (Ala.Crim.App.1988), aff'd, 548 So.2d 562 (Ala.1989).

The offenses were not “connected in their commission. ”

Tillman argues on appeal, as he did in the trial court, that the crimes were not connected in their commission and that this ground did not support consolidation of the charges for trial. See Rule 13.3(a)(2), Ala. R.Crim. P. Prior Alabama cases have upheld consolidation for trial of offenses “connected in their commission” when they occurred simultaneously or within a relatively short period and as part of a sequence or series of events. These crimes were not committed within a short span of time, nor were they part of a sequence or series of events.
First, these two crimes were remote in time. Janet died on October 26, 2005, and Tillman forged her name on the unsolicited loan check on January 31, 2006. In comparison, a review of several Alabama cases upholding consolidation of charges reveals that the joined offenses have not been so remote from one another as were the murder and forged-instrument charges in this case. For example, in Ex parte Scott, 728 So.2d 172 (Ala.1998), the Alabama Supreme Court held that a car-theft charge had been properly joined with capital-murder charges, noting that the car had been stolen immediately after the murder and that the defendant had used the vehicle to leave the area where the murder had been committed. In Tolliver v. State, 814 So.2d 991 (Ala.Crim.App.2000), this Court held that several charges of breaking and entering a vehicle and theft had been properly consolidated for trial because they were connected and part of a common plan or scheme because all the cases involved the same actions and they all occurred during one evening. In Green v. State, 599 So.2d 631 (Ala.Crim.App.1991), this Court upheld the consolidation of three indictments charging Green with several counts of burglary, theft, and receiving stolen property, noting that the offenses allegedly occurred within a 16-day period. The lengthy period between the murder and the forged-instrument charges here is one factor that leads to the conclusion that the two crimes were not “connected,” within the meaning of Rule 13.3(a)(2).
Furthermore, although the State alleged that Tillman murdered Janet to obtain the proceeds from her life-insurance policy, the unsolicited check mailed to Janet three months after her death was completely unforeseeable and was not derived from the murder. The resulting forgery of the check was not in any way connected with the murder. In fact, the forgery could have occurred and Tillman could have been prosecuted for that crime whether Janet was dead or alive. Because the connection between the forged-instrument charge and the murder charge was so tenuous as to be nonexistent, and because the time between the crimes was too remote to justify consolidation of the charges under Rule 13.3(a)(2), Ala. R.Crim. P., to the extent *838 the trial court relied on this ground when it consolidated the murder and forged-instrument charges for trial, it erred.

The crimes were not part of a common plan or scheme.

Consolidation of the two crimes on the basis that they were part of a common plan or scheme, Rule 13.3(a)(3), Ala. R.Crim. P., was also not warranted.
“[T]he ‘common scheme or plan’ provision of Rule 13.3 is limited by the ‘common scheme or plan’ exception to the rule excluding collateral crimes evidence. That is, multiple offenses alleged to have been committed by the same defendant may not be consolidated and tried jointly under the ‘common scheme or plan’ provision of Rule 13.3 unless evidence of each offense would be admissible, under the ‘common scheme or plan’ exception to the collateral crimes exclusionary rule, [Rule 404(b), Ala. R. Evid.,] at a separate trial of the other offense. See King v. State, 518 So.2d [880,] 884 & n. 2 [(Ala.Crim.App.1987)]; Ex parte Hinton, 548 So.2d at 566.
“The ‘common scheme or plan’ exception to the rule excluding collateral crimes evidence comes into play only when there is a real question as to the identity of the perpetrator. Ex parte Bowden, 538 So.2d 1226, 1234 (Ala.1988). In Bowden, the Supreme Court reiterated that identity must be genuinely at issue before the ‘identity exception’ can be invoked. 538 So.2d at 1234.”
Kennedy v. State, 640 So.2d 22, 29-30 (Ala.Crim.App.1993).
There was never a question as to the identity of the perpetrator of the murder or the person in possession of the forged instrument; Tillman admitted that he forged Janet’s name on the unsolicited check, and he admitted that he had fired the shot that killed her three months earlier. The only disputed issue at trial was Tillman’s intent during the shooting: the State attempted to establish that Tillman had intended to murder his wife, and Tillman always maintained and attempted to prove that the shooting was accidental. Because there was no real and open issue as to the identity of the person who shot Janet or who forged the check, the presentation of evidence about one crime was not relevant or material in the trial of the other crime, and consolidation on the ground that the two crimes were part of a common plan or scheme was also improper.

Actual prejudice

Having determined that consolidation was not warranted for any of the reasons set forth in Rule 13.3, Ala. R.Crim. P., we now must determine whether the improper joinder of the two cases resulted in actual prejudice to Tillman. See Ex parte Tisdale, 990 So.2d 280, 283 (Ala.2007) (holding that misjoinder requires reversal if it resulted in actual prejudice and that the harmless-error doctrine applies to misjoinder). Tillman disputed the State’s allegation that he had intended to shoot Janet, and he presented substantial evidence — including expert testimony — in an attempt to establish that the shooting had been an accident. Apart from the evidence the State offered to establish that Tillman had murdered Janet, the jury also heard testimony that Tillman had forged the signature of his deceased wife months after she had died and it heard the State’s implication that Tillman’s actions following the fortuitous loan offer proved that, months earlier, he had intended to kill his wife. Evidence about the forged-instrument charge was inflammatory and prejudicial, and it diverted the jury’s attention away from the far weaker and unrelated evidence that Tillman had intentionally killed his wife. We agree with the asser *839 tion Tillman made in his brief to this Court:
“The prejudice from consolidation was particularly acute in this case because the State’s evidence of the forgery was much stronger than its evidence that Mr. Tillman intended to kill. The spillover effect from the forgery evidence made it likely the jury overlooked weaknesses in the State’s proof of intent because it was confident that he was guilty of a charged offense. See Jenkins v. State, 472 So.2d 1128, 1130 (Ala.Crim.App.1985) (finding prejudice because ‘the overwhelming likelihood that proof that [the defendant] was guilty of one offense was used to convict him of another even though proof of that guilt would have been inadmissible at a separate trial’).... ”
(Tillman’s brief, at p. 34.)
Certainly the State’s evidence in the murder case indicated that Tillman was a liar and an adulterer. The evidence of the forgery of his wife’s signature after her death, however, added a macabre element to the State’s evidence about Tillman’s actions before Janet’s death and made it more likely that the jury would unfairly convict him of murder based on an unrelated incident. Tillman suffered actual prejudice as a result of the improper joinder of the offenses, and the error cannot be considered harmless. We are compelled to reverse both convictions, and to remand the cause to the court below.

Collateral-act evidence

We briefly address another issue raised by Tillman because it might arise again if the State chooses to retry Tillman for these charges. Tillman argues in Issue II of his brief that the trial court erred when it permitted the State to present statements that were made during Tillman’s hours-long videotaped interrogations, which were played for the jury. Specifically, Tillman contends that the trial court erred when it permitted the jury to hear allegations that he molested one of his daughters, that he abused cocaine and alcohol, that he used church property to view pornography and to call adult telephone lines, that he took money from another daughter’s trust fund without permission, that he engaged in extramarital affairs, and that he visited a strip club. The State argues that Tillman’s arguments regarding this issue were not preserved for appellate review, and that, even if the arguments had been preserved, they are without merit. Whether Tillman preserved the issue for review is moot, in light of our reversal of the convictions. However, if the State seeks to present evidence of this or any other collateral bad acts in any future trial, introduction of such evidence should be reevaluated in light of Rule 404(b), Ala. R. Evid., and cases applying that general rule of exclusion. E.g., Ex parte Billups, 86 So.3d 1079 (Ala.2010); Ex parte Jackson, 33 So.3d 1279 (Ala.2009).
For the foregoing reasons, the judgment of the circuit court is due to be reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
KELLUM, J., and HOUSTON, Special Judge,[4] concur. BURKE, J., dissents, with opinion, which WINDOM, J., joins. JOINER, J., recuses himself.

. This case was originally assigned to another judge on the Court of Criminal Appeals. *834 Judge J. Michael Joiner recused himself. On August 1, 2011, Chief Justice Charles R. Malone of the Alabama Supreme Court appointed retired Alabama Supreme Court Associate Justice Gorman Houston to sit specially on this case pursuant to §§ 12 — 18—7(b) and 12-18 — 10(e), Ala.Code 1975. The case was reassigned to Presiding Judge Welch on August 23, 2011.

. The transcript of the hearing on the motion to consolidate and on the admissibility of evidence of prior bad acts pursuant to Rule 404(b), Ala. R. Evid., is in a supplemental record filed on September 3, 2010, and is designated "Supp. R.” in this opinion.

. In its brief to this Court, the State asserts an incorrect standard of appellate review for a claim of improper consolidation of charges. The State argues that the trial court's ruling is subject to reversal only for a clear abuse of discretion, and it alleges that Tillman must show "the most compelling prejudice” to demonstrate that he is entitled to a reversal. (State’s brief, at p. 48, citing Summerlin v. State, 594 So.2d 235, 236 (Ala.Crim.App.1991); Ex parte Tisdale, 990 So.2d 280, 283 n. 1 (Ala.2007).) The State has cited the standard of review for the trial court’s denial of a defendant's motion, made pursuant to Rule 13.4, Ala. R.Crim. P., to sever charges that were properly consolidated. The issue presented in this case is whether the offenses contained in two separate indictments were properly consolidated by the trial court, not whether it erred when it denied a motion to sever offenses previously joined in a single indictment. The standard of review for the denial of a motion to sever requires proof of a higher degree of prejudice than does the stan *837 dard we are bound to apply here. Ex parte Tisdale, 990 So.2d at 283.